
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA

– against –

JUAN MATOS

Defendant.

---

12-CR-219

Statement of Reasons Pursuant to
18 U.S.C. § 3553(c)(2)

**JACK B. WEINSTEIN, Senior United States District Judge:**

A sentencing court shall "state in open court the reasons for its imposition of the particular sentence." 18 U.S.C. § 3553(c). If the sentence is not of the kind prescribed by, or is outside the range of, the Sentencing Guidelines referred to in Section 3553(a)(4), the court shall indicate the specific reasons for imposing a sentence different from that provided by the Guidelines. 18 U.S.C. § 3553(c)(2). These "reasons must also be stated with specificity in a statement of reasons form." *Id.* Even though the Guidelines are now "advisory" rather than mandatory, *see United States v. Booker*, 543 U.S. 220, 245-46 (2005), the sentencing court must still adhere to the requirements of 18 U.S.C. § 3553(c)(2). *United States v. Jones*, 460 F.3d 191, 197 (2d Cir. 2006).

The sentencing court's written statement of reasons shall be "a simple, fact-specific statement explaining why the Guidelines range did not account for a specific factor or factors under § 3553(a)." *United States v. Rattoballi*, 452 F.3d 127, 138 (2d Cir. 2006). Such a statement should demonstrate that the court "'considered the parties' arguments' and that it has a 'reasoned basis for exercising [its] own legal decisionmaking authority.'" *United States v. Cavera*, 550 F.3d 180, 193 (2d Cir. 2008) (en banc) (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)) (alterations in original). Although a written statement of reasons pursuant to

1

18 U.S.C. § 3553(c)(2) is not necessary when the court imposes a guidelines sentence, the statement may nevertheless assist the reviewing court and the United States Sentencing Commission in understanding the reasons for the court's sentence.

On November 16, 2012, Juan Matos pled guilty to knowing conversion of United States Department of Treasury tax refund checks. *See* 18 U.S.C. § 641. The remaining count was dismissed.

Juan Matos opened a business bank account for a grocery store named JM Supermarket sometime before the end of 2010. He was the sole authorized signatory for the account. At the request of his brother-in-law and co-conspirator ("CC"), Matos began accepting tax refund checks and depositing them in JM Supermarket's bank account in late 2010 or early 2011. Matos would give the proceeds of the deposits to CC.

The refund checks came from a scheme in which CC submitted false and fraudulent personal income tax returns to the Internal Revenue Service (IRS). CC used improperly obtained Social Security numbers of Puerto Rico residents and false New York City mailing addresses to file the returns. Matos's only role in the scheme was to cash the tax refund checks.

Between late 2010 and October 2011 Matos was responsible for depositing $372,980.87 into the JM Supermarket bank account. He was paid approximately 5-10% of the total value of the checks he cashed. While Matos did not initially know that the checks were part of an illegal scheme, by the end, he knew the checks and signatures were not legitimate.

Matos was sentenced on July 10, 2014. The proceeding was videotaped in order to develop an accurate record of the courtroom atmosphere and the factors and considerations that a district court must evaluate in imposing a sentence under 18 U.S.C. § 3553(a). *See In re Sentencing*, 219 F.R.D. 262, 264-65 (E.D.N.Y. 2004) (utility of videotape on appeal).

The total offense level is fifteen and defendant's criminal history is category I. The Guidelines range of imprisonment is between eighteen and twenty-four months. *See* U.S. Sentencing Comm., *Guidelines Manual*, § 5E1.2(c)(3),(4) (Nov. 2012). The fine range is between $4,000 and $40,000. *See id.*

The maximum term of imprisonment is ten years. *See* 18 U.S.C. § 641. The maximum fine is $40,000. *See* 18 U.S.C. § 3571(b)(3) and 3571(d). The offense to which the defendant pled guilty permits probation for a term of not less than one year or greater than five years. *See* 18 U.S.C. § 3561(c)(1). The Guidelines advise against probation. *See* U.S. Sentencing Comm., *Guidelines Manual*, § 5B1.1, comment. (n.2) (Nov. 2012).

Matos was sentenced to time served and three years of supervised release. A mandatory special assessment of $100 was imposed. Restitution was owed in the amount of $372,980.87, payable at the rate of ten percent of defendant's net income after taxes. No fines were imposed because the defendant does not have any assets, and it is unlikely that he will have any in the foreseeable future to pay a fine. A separate forfeiture order was entered requiring defendant to make a payment of $30,000 to the government, payable to the U.S. Marshals Service, by July 26, 2014. If the forfeiture is not paid by the due date, interest shall accrue on any unpaid portion at the judgment rate of interest. *See* 18 U.S.C. § 3612(f)(2). As a condition of defendant's supervised release, he must fully disclose his financial situation to his probation officer on an ongoing basis.

Respectful consideration was given to the Sentencing Guidelines, the Sentencing Commission's policy statements, and all other factors listed under 18 U.S.C. § 3553(a) to ensure that the sentence is "sufficient, but not greater than necessary, to comply with the purposes" of

sentencing. *See* 18 U.S.C. § 3553(a). The court departed from the guidelines pursuant to the government's 5K1.1 letter. *See* 18 U.S.C. § 3553(e).

The court considered the "nature and circumstances of the offense and the history and characteristics of the defendant." *See* 18 U.S.C. § 3553(a)(1). Defendant was involved in a scheme to obtain fraudulent federal income tax returns. This is a serious offense. When he was first asked to deposit the refund checks, however, he did not realize that what he was doing was illegal. He began cooperating with the government immediately after his arrest.

Defendant was born in Santo Domingo, Dominican Republic in 1957. He immigrated to the United States in 1990 for better opportunities.

Matos has three adult children and one seven-year-old son. All three of his adult children and his ex-wife know of his conviction and remain supportive. Matos voluntarily provides financial support to his ex-girlfriend and their seven-year-old son. His ex-girlfriend describes him as a caring and involved father. Matos's twenty-six-year-old son said he would be selling his grocery-store business in order to help his father pay the $30,000 forfeiture order.

Defendant suffers from high blood pressure for which he is prescribed medication. In October 2013 he had a mini-stroke. Defendant would receive better treatment for his condition outside of prison.

Defendant is a legal permanent resident of the United States. After pleading guilty to this crime, the United States Immigration and Customs Enforcement agency may begin deportation proceedings against him by taking him into custody. He may also face deportation proceedings if he leaves the country and tries to re-enter.

Under Section 3553(a)(2)(B) of Title 18, a sentencing court must consider two major factors: general and specific deterrence. General deterrence is satisfied by the felony conviction

and its collateral consequences, including the possibility of his deportation from the United States. Specific deterrence has been substantially achieved. Defendant has expressed genuine remorse. The sentence is appropriate given defendant's circumstances and the necessity of providing an incentive for criminal defendants to cooperate with the government in the future.

Jack B. Weinstein
Senior United States District Judge

Dated: July 22, 2014
      Brooklyn, New York